Pittsburgh, C. C. & St. L. Ry. v. H. L. Mooar Lumber Co.

1. Demurrage—Lien for Same.

> A railroad company has a common-law lien upon the property in a car, for its proper demurrage charges against such car, and may enforce the same by refusing to deliver such property until payment of the demurrage charges has been made.

2. Lien Exists Independently of Stipulation in Contract of Shipment.

> Such lien exists independently of any stipulation therefor in the contract of shipment, and, in an action to enforce the same, it is not necessary to aver or prove a special contract with reference thereto.

Error to Franklin common pleas court.

**Henderson & Livesay** and **K. E. Burr,** for plaintiff in error.

**A. E. Addison,** for defendant in error, Huston.

**M. E. Thrailkill,** for defendant in error, H. L. Mooar Lumber Co.

On June 23, 1902, Southern Railway car No. 8,022, loaded with lumber consigned to the defendant in error, the H. L. Mooar Lumber Company, arrived in the yards of the plaintiff in error, the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company at Columbus, notice of the arrival of the car being sent to the defendant in error by the plaintiff in error on the same day.

On the following day the defendant in error sent its men to the railroad yards to inspect the lumber, and the drivers, after looking about the yards and being unable to find the car, returned to the lumber company's office and reported the car not there. The drivers made other trips to the yards from time to time in search of the car, consuming

Railway v. Lumber Co.

from twelve to fourteen days in this way, but they failed to go to the railroad offices and ask whether the car had arrived or to make inquiry for the car of the railroad yard men, who knew and could have told them its location.

On July 5 the drivers went to the railroad offices and there paid the freight on the car, but during the interim between June 23 and July 5, demurrage charges to the amount of eight dollars had accrued and the railroad company refused to place the car where it could be unloaded until these charges had been paid.

The lumber company refused to pay the demurrage, and the railroad company, declining to allow the car to be unloaded, continued to hold it until December 23, at which time the demurrage amounted to $138 and the lading of the car was turned over to the defendant in error, Archibald H. Huston, for storage, Mr. Huston advancing the company's charges in accordance with the usual custom existing between himself and the railroad company.

On December 24, while the lumber was being unloaded and hauled from the car to the storage warehouse, the lumber company seized the lumber under a writ of replevin, and in February, 1904, the case was tried to a jury, the jury, under instructions from the court, rendering a verdict against the railroad company for its demurrage, the court's charge being, in substance, that, in the absence of a contract, no lien in favor of a railroad company for its demurrage charges exists.

The following was the trial judge's charge upon this point:

"  *  *  * Upon receipt of the notice (of the arrival of the car) it was the duty of the plaintiff to go to the office of the railway company and pay the freight or tender the same. It was not sufficient for him to send his man to the railway yards to hunt for the car of lumber. *  *  * The plaintiff, therefore, could not object to a charge for demurrage on this car 8,022 after the two days, as he did not pay the freight and demand that the car be turned over to him to be unloaded.

"But the company could not demand, on its part, that this demurrage should be paid as a condition of turning over the car, unless it had a lien for the demurrage. Now in the absence of any contract for such a lien, it does not exist at law and the company must collect its claim for demurrage as ordinary debts are collected and cannot hold the property for the demurrage. I find there is no evidence in the case of such a contract as to this car, and the defendant, the railway company, does not state in its answer that there was a stipulation in the bill of lading that such charges should be a lien. It follows, therefore,

Franklin County.

that as to this car 8,022, the plaintiff having paid the freight, was entitled to the possession of the lumber and your verdict should be in his favor.''

A motion for new trial having been overruled and judgment rendered against the railroad company, a reversal of the judgment is here sought on the sole ground of error in the court's charge to the jury.

## DUSTIN, J.

''We think under the authorities cited in the brief of plaintiff in error that the railway company had a common-law lien on the lumber for 'demurrage,' and that it was not necessary to aver or prove a special contract with reference thereto.  It was therefore error for the court to charge that in absence of averment and proof as to the lien it did not attach, and that the verdict as to car 8,022 should be for the lumber company.

''The special findings of fact were not inconsistent with the general verdict.

''The judgment of the common pleas court on the first cause of action will therefore be reversed and remanded for new trial.

''As to the second and third causes of action the case is not before us, a new trial having been granted below, and no final order or judgment rendered.''

**Wilson** and **Sullivan, JJ.**, concur.